Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

*In propria persona*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews, <br><br> Plaintiff, <br><br> vs. <br><br> ~~Persons associated with (602)898-8725,~~ <u>Direct Health Solutions Insurance Agency, LLC ,</u> <br><br> <u>and</u> <br><br> <u>Adroit Health Group LLC,</u> <br><br> Defendant<u>s</u>. | Case No.: <u>2:24-cv-01342-KML</u> <br><br> Complaint for Violations of: <br><br> 1.   NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] <br><br> 2.   WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] <br><br><br> DEMAND FOR JURY TRIAL |

///

COMPLAINT- 1

## COMPLAINT

### Preliminary Statement

1. "When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line." If you call people who haven't opted in , then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

2. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The Defendants in this action Persons associated with (602)898-8725 and orchestrated placing at least seven illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List.

4. Plaintiff never consented to receive such messages.

### Parties

5. Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

6. Defendant Direct Health Solutions Insurance Agency, LLC ("Health Solutions") ~~Persons~~ is an entity registered in the State of Florida, and is in the business of selling health insurance products throughout the United States over the telephone. ~~associated with (602)898-8725's ("8725") current identity is unknown, and will be amended once identified~~.

~~6.~~7. Defendant Adroit Health Group LLC ("Adroit") is an entity registered in the State of Texas, and is in the business of selling health insurance products throughout the United States utilizing agents such as Health Solutions.

### Jurisdiction & Venue

COMPLAINT- 2

7.8. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8.9. The Court has specific personal jurisdiction over the Defendants because the defendants caused the events complained herein to occur in Arizona out of which the TCPA claims arose, and the defendants had minimum contacts with Arizona to justify assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.*, 693 P.2d 904 (Ariz. 1985). Defendants intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least seven times within a twelve-month period to advertise their services despite Plaintiffs number being listed on the national do not call registry in violation of the TCPA. Additionally 8725 and their representatives are licensed to sell insurance by the State of Arizona.

## Venue

9.10.   The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9. Under the TCPA, an individuals may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3 shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

COMPLAINT- 3

10. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

11. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either 5 section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013). 22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

12. When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up) and *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**Factual Allegations**

13. To promote their services Defendants also relied on the use of ATDS systems.

14. Plaintiff had no prior business relationship with Defendants.

15. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

16. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

17. The Cell Number has been on the National Do-Not-Call registry since November 7, 2006.

COMPLAINT- 4

18.  <u>Plaintiff registered the Cell Number himself on the Naitonal Do-Not-Call registry.</u>

~~18.~~<u>19.</u>  Despite this registration, 8725 admitted to placing at least seven calls to Plaintiff.

~~19.~~<u>20.</u>  The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

~~20.~~<u>21.</u>  Plaintiff did not consent to receive telephone calls via ATDS.

~~21.~~<u>22.</u>  The Cell Number is not associated with a business.

Calls to Plaintiff

~~22.~~<u>23.</u>  On or about May 17, 2024, at 8:58 am, Plaintiff received a call presenting caller ID (602) 898-8725.

~~23.~~<u>24.</u>  Plaintiff was greeted by an individual who asked for Plaintiff and said they were calling on behalf of "Health Enrolment Center".

~~24.~~<u>25.</u>  Because Plaintiff believed he had received several other similar phone calls in the past he pressed the caller for more specific identifying information.

26.  Defendant's representatives refused to identify themselves or company, and hung up on Plaintiff.

~~25.~~<u>27.</u>  <u>Plaintiff attempted call back, but found his number had been blocked by Defendants.</u>

~~26.~~<u>28.</u>  On or about May 17, 2024, at 9:01 am, called back (602) 898-8725<u> from a different telephone number</u>.

~~27.~~<u>29.</u>  Plaintiff was greeted by a caller named Abby.

~~28.~~<u>30.</u>  Abby declined to identify herself or company, and transferred Plaintiff's call to an individual who identified themselves as Ryan.

~~29.~~<u>31.</u>  Ryan claimed that they called because Plaintiff had filled out a form online requesting more information.

COMPLAINT- 5

30.32.  Ryan confirmed Plaintiff's name and provided an incorrect address as proof of Plaintiff's consent.

31.33.  Plaintiff maintained that he did not provide any such consent.

32.34.  Plaintiff requested that Ryan send him evidence of that consent.

33.35.  Plaintiff never received any such proof.

34.36.  Ryan would only say that his company was "Health Enrolment Center".

35.37.  When plaintiff attempted to confirm that on various secretary of state searches, he was unable to do so.

36.38.  Ryan refused to provide the identity of his lead provider.

37.39.  Ryan admitted it could have been a fraudulent opt in saying "They're not calling you and you're being rude. To them, you're being rude and then they just decided to put it on there because there's some people that are bad in this world."

38.40.  Ryan admitted to calling Plaintiff seven time saying "So between both of us, nine total. Seven from my company, two from you".

39.41.  Ryan said he would put Plaintiff's number on their internal do-not-call list, and that he would block Plaintiffs number so that he would be unable to call back in the future.

42.  Ryan blocked Plaintiff's second number so that it would impossible for him to identify his identity and the identity of his company.

43.  On or about October 2, 2024 Plaintiff circumvented the blocks on his numbers, called (602)898-8725, and spoke with Lizbeth Benitez ("Benitez").

44.  Benitez claimed to be licensed in Arizona.

45.  Benitez sent Plaintiff a text message which read https://www.a1healthcare.com/sig/?a=27F3DE3D-E2C0-4629-A1D2-57833DD029EC (Sent from Direct Health Solutions Insurance Agency LLC - Benitez, Lizbeth)

46.  Plaintiff asked who Direct Health Solutions Insurance Agency LLC was, and Benitez confirmed that was her "brokerage".

COMPLAINT- 6

47. Benitez attempted to bill Plaintiff's Visa Card, which resulted in an authorization labeled "HEALTH8002693563".

48. Searching for HEALTH8002693563 on Goolge reveals the telephone number (800)269-3563 is associated with Adroit Health Group LLC.

49. After the authorization failed, Plaintiff received an email from pay.1274.115677987@enrollment123.com ("Payment Email").

50. The Payment Email carbon copied csr@directhealthsolution.com.

51. Based on the name Plaintiff believes and therefor avers the domain name "directhealthsolution.com" is associated with Defendant Health Solutions.

52. The Payment Email contained a link to https://www.a1healthcare.com/members.

~~40.~~53. Visiting https://www.a1healthcare.com/members, prominently identifies Adroit Health Care.

### Defendants' Use of an ATDS

~~41.~~54. 8725's called frequently and from various different numbers.

~~42.~~55. 8725's representatives purposefully attempted to conceal the identity of their company.

~~43. When calling back the numbers presented by the caller ID's Plaintiff received the same identical prerecorded message stating "[message]"~~

~~44. 8725's representatives solicited services did not target Plaintiff individually but rather targeted "the homeowner".~~

~~45.~~56. For these reasons, Plaintiff believes the telemarketers used an ATDS to generate leads for Defendant's debt relief services.

~~46.~~57. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

COMPLAINT- 7

47.58.  The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

48.59.  In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

49.60.  The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

50.61.  Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

51.62.  Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

COMPLAINT- 8

52.63. No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

53.64. Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

### **Defendants' Conduct Was Knowing and Willing**

54.65. Defendants intentionally called Plaintiff multiple times in order to advertise their services to Plaintiff.

55.66. Defendants knew their actions were in violation of the TCPA and willfully continued their conduct calling Plaintiff multiple times despite the registration of his number on the National Do-Not-Call List.

### **Vicarious Liability**

56.67. Defendant 8725 Adroit through their authorized representatives made multiple auto-dialed robocalls to Plaintiff.

57.68. Representatives of 8725 Health Solutions used utilized software provided by Adroit 8725.

58.69. Representatives of Health Solutions 8725 used proprietary information and systems provided by Defendant Adroit 8725.

COMPLAINT- 9

59.70. Adroit 8725 authorized its representatives to make the phone calls at issue here.

60.71. Adroit 8725 was aware of the phone calls being made by its representatives and accepted referrals from its representatives pursuant to the authorization provided to representatives by Health Solutions8725.

61.72. Adroit 8725 gave access to their proprietary systems and software to Defendants representatives.

62.  8725 hired an offshore telemarketer to make phone calls on their behalf. representatives is the agent of 8725 and the offshore telemarketer is the subagent of 8725.

63.  The offshore telemarketer made the phone calls at the direction and control of 8725.

64.73. Adroit 8725 exercised interim control over whom and under what conditions referrals would be accepted.

65.74. Adroit 8725 has been aware of the TCPA-violating phone calls made by salespersons for years and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite the knowledge of the violations.

66.75. Adroit 8725 has made telemarketing in violation of the TCPA a regular source of referrals.

67.76.  A defendant may be held vicariously liable for Telephone Consumer Protection Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(2). *Gomez v. Campbell-Ewald Co.*, 768 F.3d 872, 11 (9th Cir. 2014).

### Ratification

68.77.  Health Solutions 8725 was fully aware of Plaintiff's desire to not be called and solicited for their services.

COMPLAINT- 10

69.78.  Defendant Health Solutions 8725 was consciously calling Plaintiff's with full awareness the phone calls were violating the TCPA and that Plaintiff had delivered multiple DNC requests to Defendant Freedom.

70.79.  Defendant Health Solutions 8725 was consciously calling Plaintiff's with full awareness the they did not maintain an internal do not call policy as required by the TCPA and that Plaintiff had requested it.

71.80.  Defendant Health Solutions 8725 was consciously calling Plaintiff's with full awareness the they did not place Plaintiff on their internal do not call list as required by the TCPA and that Plaintiff had requested it because they did not maintain one.

72.81.  Even when a party is not directly liable, it may nevertheless be vicariously liable "under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *DISH Network*, 28 FCC Rcd. at 6584. These agency principles include "not only formal agency [or actual authority], but also . . . apparent authority and ratification." *Id.* ; see also *FDS Rest., Inc. v. All Plumbing, Inc.*, 241 A. 3d 222, 238n. 24 (D. C. 2020) (noting that a different provision of the TCPA, 47 U.S.C. § 217, creates vicarious liability for the acts of an agent). The plaintiff must establish the agency relationship between the defendant and the third-party caller to establish vicarious liability. See *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072-73 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019) (citing *Gomez v. Campbell-Ewald Co.* , 768 F.3d 871, 878 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016), as revised (Feb. 9, 2016)).

**The TCPA Prohibits All Automated Calls to Protected Numbers**

73.82.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

COMPLAINT- 11

74.83.  Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

75.84.  According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

76.85.  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

77.86.  These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

78.87.  "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

79.88.  U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

80.89.  The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and

COMPLAINT- 12

Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

81.90. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

82.91. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

83.92. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

84.93. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

85.94. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

86.95.  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

87.96.  The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

88.97.  47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

89.98.  Plaintiff incorporates the foregoing allegations as fully set forth herein.

90.99.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations

COMPLAINT- 14

of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

91.100.  As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

92.101.  Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

93.102.  Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

94.103.  Defendants' violations were willful and/or knowing.

### Count Two

95.104.  Plaintiff incorporates the foregoing allegations as fully set forth herein.

96.105.  Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

97.106.  As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

98.  Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

**107.**  Defendants' violations were willful and/or knowing.

### Count Three

COMPLAINT- 15

**Violation of the Florida Telephone Solicitation Act,**

**Fla. Stat. § 501.059**

108. Plaintiff incorporates the foregoing allegations as fully set forth herein.

109. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

110. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

111. Defendant Health Solutions failed to secure prior express written consent from Plaintiff.

112. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

113. Defendant Health Solutions made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

114. As a result of Defendant Health Solutions' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and are each entitled to a minimum of $500.00 in damages for each violation. *Id.*

~~99.~~

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

COMPLAINT- 16

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

D. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this <u>October 7, 2024</u><s>October 6, 2024</s>.

Jason Crews

COMPLAINT- 17